WALLACE, Judge.
 

 Kenneth L. Ingraham challenges the judgments and sentences imposed on him after a jury found him guilty of unlawful possession of a concealed handcuff key, a violation of section 843.021(2), Florida Statutes (2004), and felony vending machine theft, a violation of section 877.08(3), (4), Florida Statutes (2004).
 
 [1]
 
 The trial court sentenced Mr. Ingraham to five years in the state prison on each offense. The sentences were designated to run concurrently with each other and consecutively to Mr. Ingraham’s sentence in another case.
 

 On appeal, Mr. Ingraham addresses four points. First, he argues that he was improperly convicted of felony vending machine theft when the information omitted to state an essential element of that offense, to wit: that he intended to commit larceny. Second, with respect to the felony vending machine theft charge, the trial court committed fundamental error by failing to instruct the jury on the element of the requisite intent to commit larceny. Third, the trial court failed to conduct
 
 *764
 
 adequate Nelson
 
 [2]
 
 and Faretta
 
 [3]
 
 inquiries before permitting Mr. Ingraham to discharge his court-appointed counsel and represent himself at his trial and at his sentencing. Fourth, the trial court erred in imposing investigative costs in the amount of $225 in the absence of appropriate documentation from the State.
 

 We reject Mr. Ingraham’s first and second arguments for the reasons discussed below. We grant relief in part to Mr. Ingraham with respect to his third argument, vacate his sentences, and remand for resentencing after a proper
 
 Faretta
 
 inquiry. Because we are vacating Mr. Ingraham’s sentences, his fourth argument is moot.
 

 I. THE FACTS
 

 In the early morning hours of February 20, 2005, a citizen informant was working late at his real estate office in Palm Harbor, Florida, when he heard a loud banging noise coming from a nearby automotive business. The informant went outside to investigate and saw a man swinging “a sledge hammer or something like that” at a beverage machine outside the automotive business. A brown panel van was parked near the man. The informant immediately returned to his office and called 911. While talking to the dispatcher, the informant continued to watch as events unfolded outside. When a Pinellas County Sheriffs patrol car approached the scene, the man attacking the beverage machine jumped into the passenger seat of the van. The driver, a woman, immediately pulled away and began travelling south on U.S. Highway 19.
 

 Pinellas County deputies stopped the van and had the occupants, Mr. Ingraham and the driver, get out of the van. Mr. Ingraham was dressed in combat fatigues and boots. Some of the keys on the key ring he carried were of the type commonly used to open vending machines. The deputies found numerous tools in the van, including two crowbars. One of the crowbars showed signs of recent use. The deputies also found a lock beneath the front passenger seat of the van that was similar to locks used on vending machines. Notably, one of the items the deputies found in the van was a money bag.
 

 Mr. Ingraham admitted to the deputies that he had come from the location of the automotive business. At the scene, the deputies inspected the vending machine and found that it had sustained damage of the sort consistent with an attempt to break into it or pry it open. The damage to the machine appeared to be recent; there were still pieces of the machine on the ground. In addition, the lock for the machine was missing.
 

 A pat-down search of Mr. Ingraham revealed that he was carrying a set of handcuffs in a case. One of the deputies asked Mr. Ingraham about the location of the key to the handcuffs. Mr. Ingraham replied that he had left the key at home. After Mr. Ingraham was handcuffed and placed in the back of one of the patrol cars, the deputies observed him “squirming” and “fidgeting.” Mr. Ingraham’s behavior aroused the deputies’ suspicions, and they removed him from the patrol car. A search of the back compartment of the patrol car revealed a handcuff key beneath the seat cushion. The deputy responsible for that patrol car testified that he had checked the vehicle the day before and had pulled the seat out to look beneath it. Since checking the vehicle the day before,
 
 *765
 
 no one but Mr. Ingraham had been in the back seat.
 

 Mr. Ingraham represented himself at trial with the assistance of standby counsel.
 
 [4]
 
 Although he did not take the stand in his own defense, Mr. Ingraham played an active role in the trial. He participated in jury selection, cross-examined the State’s witnesses, called three defense witnesses, and made a brief closing argument to the jury.
 

 The jury returned verdicts finding Mr. Ingraham guilty as charged on both counts of the information. After the jury returned its verdicts, the State presented proof that Mr. Ingraham had a prior conviction for vending machine theft.
 

 II. THE DEFECT IN THE INFORMATION
 

 Section 877.08 defines offenses relating to coin-operated vending machines and parking meters. Section 877.08 provides, in pertinent part, as follows:
 

 (2) Whoever
 
 maliciously or mischievously
 
 molests, opens, breaks, injures, damages, or inserts any part of her or his body or any instrument into any coin-operated vending machine or parking meter of another, shall be guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.088.
 

 (3) Whoever molests, opens, breaks, injures, damages, or inserts any part of her or his body or any instrument into any coin-operated vending machine or parking meter of another
 
 with intent to commit larceny
 
 is guilty of a misdemeanor of the second degree, punishable as provided in s. 775.082 or s. 775.083.
 

 (4)Whoever violates the provisions of subsection (3) a second time,
 
 and is convicted of such second separate offense, either at the same term or a subsequent term of court, shall be guilty of a felony of the third degree, punishable as provided in s. 775.082, s. 775.083, or s. 775.084.
 

 (Emphasis added.) Thus the offense of vending machine tampering or damaging under section 877.08(2) does not require proof of intent to commit larceny. This offense is categorized as a second-degree misdemeanor. On the other hand, the offense of vending machine theft under section 877.08(3) does require proof of intent to commit larceny. Vending machine theft is also defined as a second-degree misdemeanor. However, in accordance with section 877.08(4), a second offense of vending machine theft constitutes a felony of the third degree.
 

 In this case, count two of the information charged that on February 20, 2005, Mr. Ingraham
 

 did maliciously or mischievously molest, open, break, injure or damage a coin-operated vending machine, the property of that certain business entity known as
 
 *766
 
 Ace Auto Repair, the said KENNETH L. INGRAHAM having been previously-convicted of molestation of a coin machine on April 28, 1994; contrary to Chapter 877.08(4), Florida Statutes, and against the peace and dignity of the State of Florida.
 

 The caption of the information designated the crime charged in count two as “MOLESTATION OF A COIN MACHINE, 8° F.” Thus the State apparently intended to charge Mr. Ingraham with the crime of felony vending machine theft under section 877.08(8) and (4) but omitted to allege the required element of intent to commit larceny. However, Mr. Ingraham failed to move to dismiss count two of the information in the trial court. He raises the sufficiency of the information to charge the crime of felony vending machine theft for the first time on appeal.
 

 In assessing Mr. Ingraham’s argument about the sufficiency of count two of the information to charge vending machine theft, we must address the distinction between an information that is fundamentally defective and one that is merely incomplete or imprecise.
 

 There is a difference between an information that completely fails to charge a crime and one where the charging allegations are incomplete or imprecise. The former is fundamentally defective. However, where the information is merely imperfect or imprecise, the failure to timely file a motion to dismiss under Rule 3.190(c) waives the defect and it cannot be raised for the first time on appeal. The test to determine if an information is fatally defective is whether there is a total omission of an essential element of the crime, or whether the indictment or information is so vague, indistinct and indefinite as to mislead the accused and embarrass him in the preparation of his defense, or expose him after conviction or acquittal to the substantial danger of a new prosecution for the same offense.
 

 Jones v. State,
 
 415 So.2d 852, 853 (Fla. 5th DCA 1982) (citations omitted);
 
 see also State v. Wimberly,
 
 459 So.2d 456, 458-59 (Fla. 5th DCA 1984) (quoting
 
 Jones
 
 for the foregoing proposition). Having this distinction in mind, we turn to an examination of count two of the information in this case.
 

 As noted above, the information reflects that the State charged Mr. Ingraham with a third-degree felony in accordance with section 877.08(4), which requires two convictions under section 877.08(3) to prove the felony offense. A second or successive conviction for vending machine tampering or damaging under section 877.08(2) is never a felony, and thus Mr. Ingraham was on notice that the State sought to establish his violation of section 877.08(3) to meet the prerequisite for conviction under section 877.08(4).
 

 Moreover, count two of the information recites the appropriate statute, section 877.08(4), alleged to be violated. Subsection (3) — which is incorporated into subsection (4) by reference — clearly includes the omitted words, “with intent to commit larceny,” and the information’s allegation that Mr. Ingraham acted “maliciously or mischievously” can be disregarded as mere surplusage. Under the circumstances, the omission of the required element of intent to commit larceny from count two of the information did not prejudice Mr. Ingraham in his defense.
 
 See Jones,
 
 415 So.2d at 853 (“If the information recites the appropriate statute alleged to be violated, and if the statute clearly includes the omitted words, it cannot be said that the imperfection of the information prejudiced the defendant in his defense.”). Thus, because the information was not fundamentally defective and be
 
 *767
 
 cause Mr. Ingraham failed to move to dismiss count two, it follows that Mr. Ingraham is not entitled to relief on his first argument.
 

 III. THE OMISSION TO CHARGE THE JURY ON AN ELEMENT OF THE CRIME
 

 When the trial court instructed the jury, it mistakenly read the standard jury instruction for vending machine tampering or damaging under section 877.08(2) instead of the instruction for vending machine theft under section 877.08(3). Thus the jury was not instructed on the element of intent to commit larceny. However, Mr. Ingraham did not object to the defective jury instruction in the trial court. On appeal, Mr. Ingraham argues that the trial court’s failure to instruct the jury on the required element of intent to commit larceny constituted fundamental error.
 

 With regard to jury instructions, “fundamental error occurs only when the omission is pertinent or material to what the jury must consider in order to convict.”
 
 State v. Delva,
 
 575 So.2d 643, 645 (Fla.1991) (quoting
 
 Stewart v. State,
 
 420 So.2d 862, 863 (Fla.1982)). Accordingly, the failure to instruct the jury on an element of the crime is fundamental only when that particular element is disputed at trial.
 
 Reed v. State,
 
 837 So.2d 366, 369 (Fla.2002). “Where an element of the crime is not accurately defined but is undisputed at trial, ‘the error is not fundamental error.’ ”
 
 Barrientos v. State,
 
 1 So.3d 1209, 1216 (Fla. 2d DCA 2009) (quoting
 
 Reed,
 
 837 So.2d at 369). Thus, for an error in instructing the jury to reach the level of fundamental error, “the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.”
 
 Delva,
 
 575 So.2d at 644-45 (quoting
 
 Brown v. State,
 
 124 So.2d 481, 484 (Fla.1960)).
 

 Mr. Ingraham’s conduct evidenced a methodical and businesslike approach to the conduct in which he was engaged before his flight and subsequent arrest. Mr. Ingraham acted at an hour when he was unlikely to be observed or attract the attention of others. His attire of combat fatigues and boots was appropriate for someone who intended to work with tools and machinery rather than to engage in casual activities. The presence of a driver improved Mr. Ingraham’s chances for a speedy getaway if detected and provided him with a lookout while he was engaged in his work. Mr. Ingraham had keys of the type that could be used to open vending machines. His van carried an array of tools, including two crowbars. The money bag found in the van could be used to hold coins taken from vending machines. Taking these facts into account, the State introduced ample evidence from which the jury could have reasonably concluded that Mr. Ingraham had the intent to commit larceny and was not merely engaged in malicious mischief.
 

 In addition, the element of intent to commit larceny was not a disputed issue at Mr. Ingraham’s trial. With respect to the vending machine theft charge, the only disputed element at trial was the identity of Mr. Ingraham as the perpetrator. The citizen informant did not identify Mr. Ingraham at trial as the man whom he had seen attacking the beverage machine. In his closing argument, Mr. Ingraham contended only that the State had not proven his identity as the perpetrator beyond a reasonable doubt. He did not raise the issue of his intent. In the absence of any dispute at trial concerning the element of intent, Mr. Ingraham has failed to demonstrate that the State could not have obtained his conviction for vending machine
 
 *768
 
 theft but for the defect in the jury instructions. Accordingly, the error in instructing the jury on the elements of vending machine theft does not rise to the level of fundamental error.
 

 IV. THE
 
 NELSON
 
 AND
 
 FARETTA
 
 ISSUES
 

 Mr. Ingraham also argues that the trial court committed error by failing to conduct adequate
 
 Nelson
 
 and
 
 Faretta
 
 inquiries after Mr. Ingraham expressed dissatisfaction with his court-appointed counsel and requested to represent himself. After a thorough review of the record, we conclude that the trial court gave Mr. Ingraham multiple opportunities to articulate the reasons for his dissatisfaction with court-appointed counsel.
 
 [5]
 
 Despite these opportunities, Mr. Ingraham never articulated a reason which would have warranted discharging his court-appointed counsel and appointing substitute counsel. Thus the trial court complied with its obligations under
 
 Nelson
 
 and properly denied Mr. Ingraham’s requests to replace his court-appointed counsel with substitute counsel.
 
 See Maxwell v. State,
 
 892 So.2d 1100, 1102 (Fla. 2d DCA 2004) (“If the reasons for the request [to discharge counsel] do not indicate ineffective assistance of counsel, then no further inquiry is required. If no further inquiry is required, or if after further inquiry there is no reasonable cause to believe that court-appointed counsel is not rendering effective assistance, and the defendant persists in a desire to discharge counsel, then the court must inform the defendant that he is not entitled to a court-appointed substitute counsel and that he would be exercising his right to represent himself.” (citations omitted)).
 

 We also conclude that the trial court adequately informed Mr. Ingraham of the disadvantages of representing himself.
 
 [6]
 
 The record demonstrates that Mr. Ingraham knowingly and voluntarily waived his right to be represented by counsel at his trial.
 
 See Potts v. State,
 
 718 So.2d 757, 759 (Fla.1998) (“[0]nce a court determines that a competent defendant of his or her own free will has ‘knowingly and intelligently’ waived the right to counsel, the dictates of
 
 Faretta
 
 are satisfied, the inquiry is over, and the defendant may proceed unrepresented.” (quoting
 
 State v. Bowen,
 
 698 So.2d 248, 251 (Fla.1997)));
 
 Rogers v. Singletary,
 
 698 So.2d 1178, 1180 (Fla.1996)
 
 (“Faretta
 
 requires that once a defendant asserts the right of self-representation, the court must conduct an inquiry to determine whether the defendant knowingly and intelligently waived the right to counsel.”). The trial court also appointed standby counsel to assist Mr. Ingraham at his trial, and Mr. Ingraham availed himself of standby counsel’s advice during the trial.
 

 However, the trial court erred by failing to renew its offer of counsel to Mr. Ingraham at his sentencing proceeding. Florida Rule of Criminal Procedure 3.111(d)(5) provides that “[i]f a waiver [of counsel] is accepted at any stage of the proceedings, the offer of assistance of counsel shall be renewed by the court at each subsequent stage of the proceedings at which the defendant appears without counsel.” “Sentencing is a critical stage of a criminal proceeding, and a trial court must renew the offer of counsel even if the
 
 *769
 
 defendant has previously waived counsel.”
 
 Beard v. State,
 
 751 So.2d 61, 62 (Fla. 2d DCA 1999). Accordingly, we must vacate Mr. Ingraham’s sentences and remand for resentencing after a proper
 
 Faretta
 
 inquiry.
 
 Beard,
 
 751 So.2d at 62;
 
 Descault v. State,
 
 20 So.3d 990, 991 (Fla. 1st DCA 2009);
 
 Travis v. State,
 
 969 So.2d 532, 533 (Fla. 1st DCA 2007).
 

 V. INVESTIGATIVE COSTS
 

 Mr. Ingraham argues that the $225 fee imposed on him for “investigative costs” under section 938.27(1), Florida Statutes (2004), should be struck because the State failed to provide any documentation for these costs.
 
 [7]
 
 This is a moot point because, as discussed above, the sentences imposed on Mr. Ingraham must be vacated. If the State seeks to reimpose these costs on remand, it must comply with the applicable statute.
 

 VI. CONCLUSION
 

 Accordingly, we affirm Mr. Ingraham’s judgments for carrying a concealed handcuff key and for vending machine theft. We vacate the sentences imposed on him for these offenses, and we remand for resentencing after a proper
 
 Faretta
 
 inquiry.
 

 Judgments affirmed, sentences vacated, and case remanded.
 

 KELLY, J., and GALLEN, THOMAS M., Associate Senior Judge, Concur.
 

 [1]
 

 . Mr. Ingraham's appellate counsel originally filed a brief in accordance with
 
 Anders v. California,
 
 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967). Because we determined that several issues of potential merit existed in Mr. Ingraham's case, we ordered supplemental briefing in accordance with
 
 Penson v. Ohio,
 
 488 U.S. 75, 109 S.Ct. 346, 102 L.Ed.2d 300 (1988).
 

 [2]
 

 .
 
 Nelson v. State,
 
 274 So.2d 256 (Fla. 4th DCA 1973).
 

 [3]
 

 .
 
 Faretta v. California,
 
 422 U.S. 806, 95 S.Ct. 2525, 45 L.Ed.2d 562 (1975).
 

 [4]
 

 . The record reflects that at several hearings before trial, Mr. Ingraham unsuccessfully tried to demonstrate that his court-appointed attorneys were ineffective and that he was entitled to the appointment of substitute counsel. On at least one of these occasions, the trial court also discussed the dangers of self-representation with Mr. Ingraham at length. At some point before trial, the trial court permitted Mr. Ingraham to proceed pro se and appointed private, standby counsel. At the beginning of the trial, Mr. Ingraham indicated that he would "be ending up representing myself” and that he was "re-establishing my representation of myself." After a lengthy discussion, including reference to prior conversations and renewed warnings about the dangers of self-representation, the trial court permitted Mr. Ingraham to proceed pro se. The attorney who had been appointed as standby counsel to Mr. Ingraham before trial continued to serve as Mr. Ingraham’s standby counsel during the trial proceedings.
 

 [5]
 

 . As noted above, Mr. Ingraham had several opportunities before trial to explain to the trial court why he believed his counsel was ineffective.
 

 [6]
 

 . As noted above, the trial court discussed the dangers of self-representation with Mr. Ingraham before trial and again at trial before permitting Mr. Ingraham to proceed pro se with standby counsel.
 

 [7]
 

 . The legislature amended section 938.27(1), effective July 1, 2008, to eliminate the documentation requirement. Ch. 08-111, § 44, at 725, Laws of Fla.;
 
 see also Del Valle v. State,
 
 26 So.3d 650, 652 n. 1 (Fla. 2d DCA 2010) (noting same). We do not address whether the amended statute may be applied retroactively to Mr. Ingraham.
 
 See Griffin v. State,
 
 980 So.2d 1035 (Fla.2008) (determining retro-activity of an amendment to a cost statute).